Argued April 8, affirmed May 2, 1977

PELEGE, *Respondent,*
*v.*
CHRYSLER, *Appellant.*
(TC 35-924, SC 24534)
563 P2d 701

Marvin S. Nepom, Portland, argued the cause for appellant. With him on the brief were Ray F. Merry and King & Merry, Portland.

William A. Furtick, Eugene, argued the cause for respondent. With him on the brief was David F. Lentz, Eugene.

[ 223 ]

Before Denecke, Chief Justice, and Holman, Lent and O'Connell, Justices.

O'CONNELL, J., Pro Tempore.

**O'CONNELL, J.,** Pro Tempore.

Defendant appeals from a summary judgment entered in favor of plaintiff.

On June 10, 1972, plaintiff loaned $10,000 to defendant, which defendant agreed to pay with interest at 8 percent per annum within three months. As a part of the same transaction, plaintiff was given the option to exchange the note for shares in a corporation to be established or, in the alternative, to contribute the capital in a joint venture, sharing profits and losses with defendant. The option was exercisable on or before September 1, 1972.

On September 4, 1975, plaintiff brought this action to recover the $10,000 loaned together with interest from June 10, 1972. Defendant answered on the theory that plaintiff had elected to become a joint venturer with defendant; and the joint venture having suffered losses, defendant counterclaimed to recover such losses.

The trial court, after examining the pleadings, several affidavits and exhibits, found that there was no genuine issue of any material fact, and entered a summary judgment for plaintiff.

Both parties recognize that whether plaintiff elected to participate in the joint venture in lieu of his position as defendant's creditor is a question of fact. Plaintiff contends that this question of fact was resolved by the pleadings, affidavits and exhibits on file at the time of the hearing on the motion for summary judgment.[1] Defendant takes the position that the question of whether plaintiff's status is that of creditor or joint venturer is not determinable by an examination of the evidence relied upon to support the summary judgment and that the factual issue must be tried out in a usual trial proceeding.

---

[1] The hearing was held on March 19, 1976. As plaintiff correctly contends, defendant's affidavit dated April 7, 1976, which defendant relies upon in his argument on appeal, comes too late.

It is to be borne in mind that the written agreement of June 10, 1972, set September 1, 1972 as the expiration date for the exercise of the option. It is undisputed that as late as March 15, 1973, defendant recognized plaintiff as a creditor because on that date defendant wrote a letter to plaintiff enclosing a check for 10 months' interest on the loan. Plaintiff returned this check to defendant. Defendant contends that in returning the check plaintiff stated that he had exercised his option to be a joint venturer and not a creditor. In response to this contention plaintiff produced a letter written by defendant on January 14, 1975 addressed to plaintiff's attorney, in which defendant gave an explanation for returning the money which is inconsistent with his assertion that plaintiff terminated his status as creditor. In that letter, defendant wrote:

"* * * Later, Mr. Pelege declined to accept the option offered and I offered to make an interest payment. Mike (Mr. Pelege) knew that I was having business difficulties and *as a gesture of friendship offered to postpone any interest payments.* I have a letter from him dated March 25, 1973 attesting to this." (Emphasis added.)

Then after reciting the income and expenditures in developing the property which was to be the joint venture, to show the loss defendant was suffering he continued:

"Business has been bad lately, Mr. Lentz, as I don't need to inform you. *Right now I can't give any estimate at all of when I can pay Mike any money.*" (Emphasis added.)

Defendant's letter proves that as late as January 14, 1975, defendant regarded plaintiff as his creditor rather than as his co-venturer.

Defendant argues that the January 14 letter is at least ambiguous in that the reference to "when I can pay Mike any money" could as well apply to a payment of Mike's share of the joint venture. This is a strained interpretation of the letter. The expression "when I can pay" connotes an obligation, particularly in view

of the fact that in an earlier paragraph defendant explained the reason for Mike's return of the proffered interest payment, a reference which would have no purpose in a letter written to plaintiff's attorney unless it served to explain something about an existing debt. Since we interpret the letter as referring to the payment of a debt (and we assume that the trial court also gave it that interpretation), it was incumbent upon defendant under accepted summary judgment proceeding practices to apprise the trial court by affidavit that there was evidence which could be adduced tending to prove the existence of a joint venture in spite of the contrary connotations in the letter.[2]

We find nothing in the record to support defendant's counterclaim, other than defendant's assertion in his answer and affidavit that plaintiff made an election to exchange the obligation on the note for participation in the joint venture. In the face of plaintiff's evidence, these bare assertions are not enough to present a genuine issue of material fact. We hold,

---

[2] ORS 18.105, Oregon's summary judgment statute, provides in part:

"(4) * * * When a motion for summary judgment is made and supported as provided in this section, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue as to any material fact for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

In *Doff v. Brunswick Corporation,* 372 F2d 801, 805 (9th Cir 1966), *cert denied* 389 US 820 (1967), the identical language contained in Federal Rules of Civil Procedure, Rule 56, 28 USCA, from which ORS 18.105 was taken, was interpreted as follows:

"Where, on the basis of the materials presented by his affidavits, the moving party, if at trial, would be entitled to a directed verdict unless contradicted, it rests upon the opposing party at least to specify some evidence to show that such contradiction is possible. [Citations omitted.] The burden of coming forward with specific controverting facts shifts to the opponent. [Citations omitted.] It is his duty to expose the existence of a genuine issue which will prevent the trial from being a useless formality. * * *"

*See also, First Nat. Bank v. Cities Service,* 391 US 253, 288, 88 S Ct 1575, 20 L Ed 2d 569 (1968); *Town House, Inc. v. Paulino,* 381 F2d 811, 814 (9th Cir 1967).

therefore, that the summary judgment was appropriate to dispose of the case.

Affirmed.